D. N. OSBORNE *et al.* V. CARRIE M. ATKINSON *et al.*

No. 15,412.    (94 Pac. 796.)

SYLLABUS BY THE COURT.

WILLS—*Act of Testator—Signature—Witnesses.* The written instrument involved herein does not meet the requirements of a will under section 7938 of the General Statutes of 1901, and is insufficient to convey the real estate of the testator, upon his decease, tó the beneficiaries named therein.

Error from Lane district court; CHARLES E. LOB-DELL, judge.    Opinion filed March 7, 1908.    Affirmed.

STATEMENT.

THE numerous defendants in error brought this suit to recover the possession of their interests in the northeast quarter of section 22, township 17, range 28, in Lane county, and the southeast quarter of section 14, of the same township, and to partition the same. They alleged that Osborne was in the exclusive possession of the northeast quarter of section 22, and that Whiting was in the exclusive possession of the southeast quarter of section 14, and that each of the defendants excluded the plaintiffs from said lands respectively and denied the plaintiffs any rights whatever therein. The plaintiffs further set up their respective interests, which they claimed as heirs of Moses K. Flory, deceased, and alleged that certain of the heirs of Flory had conveyed their interests in the northeast quarter of section 22 to Osborne and had conveyed their interests in the southeast quarter of section 14 to Whiting.

The defendants, Osborne and Whiting, answered separately, and each admitted that Moses K. Flory, at his death, was the owner of the two quarter-sections of land; and alleged that by his will he devised the same to Mary Ann Flory and Addie Bovard; and that Mary Ann Flory, jointly with her husband, and Addie Bovard, jointly with her husband, had conveyed the north-

east quarter of section 22 to Osborne and the southeast quarter of section 14 to Whiting. Osborne claimed exclusive ownership and right of possession to the northeast quarter of section 22, and Whiting made a similar claim to the southeast quarter of section 14. Each admitted the possession of the land claimed by him and asked that his title thereto be quieted.

Each of the defendants attached to his answer, as "Exhibit A," a copy of the instrument claimed to be the will of Flory, and, as "Exhibit B," a copy of the record of the probate court of Lane county relating to the will. "Exhibit A" reads as follows:

"April 1, 1897.
"According to the last wishes of M. K. Flory, in the presence of Elbert Fuller and B. M. Bovard he makes the following statements: Funeral expenses paid first. Turn his affairs over to Mary Ann Flory and B. M. Bovard to assist in the selling of the same and all household goods to be equally divided between her and Addie Bovard. John Tapp to be fully paid for his trouble. And enough of his property sold to pay all debts. The balance to be equally divided between Mary Ann Flory and Addie Bovard.

Signed by    B. M. BOVARD.
              ELBERT FULLER.
Probated April 17, 1897, and filed.
      [SEAL.]    B. A. BANNON, *Probate Judge*."

"Exhibit B" reads as follows:

"The State of Kansas, Lane County, ss.

"IN THE PROBATE COURT.

"In the matter of the estate of Moses K. Flory, deceased.

"FINDINGS BY THE COURT.

"And now, on this 17th day of April, A. D. 1897, and at the April term of said probate court, upon examination of said petition and in consideration of the evidence produced in this behalf, and the court being fully advised in the premises, the court makes the following findings, to wit:

"That the said Moses K. Flory died on the 3d day of April, A. D. 1897, at his residence in Lane county, Kansas, and the said Moses K. Flory made a will,

which was opened, read and evidence taken of the same and placed on record in docket of wills in and for Lane county, Kansas, and the court, finding that Mary A. Flory and B. M. Bovard were mentioned in said will as administrators, confirmed and appointed the same.

"That said Moses K. Flory died intestate; that the personal property belonging to said estate is worth about $250; that said Mary A. Flory and B. M. Bovard are competent and willing to discharge the duties of administrators of said estate.

[SEAL.]     B. A. BANNON, *Probate Judge.*"

The defendants, Osborne and Whiting, set forth their claims to their respective tracts of land as a second defense, and the plaintiffs filed a separate general demurrer to each of said defenses. The court sustained the demurrers and the case is brought here for a review of this order.

*J. S. Simmons*, for plaintiffs in error.

*A. L. Ferris, A. S. Foulks, A. W. Wilson, Harvey & Abrahams*, and *F. B. Wheeler*, for defendants in error.

The opinion of the court was delivered by

SMITH, J.: The plaintiffs in error contend that the will is valid as a written will to dispose of all the property of the testator; that the probate court of Lane county had jurisdiction to probate it as such, and did probate and file it more than two years before the commencement of this suit; and that the action of the court cannot, by reason of the lapse of time, be attacked in this collateral proceeding. They also contend that a will may be signed by the testator in person or by some other person for him; that if signed by some other person such person may write the name of the testator or his own name thereto; and that however informal such instrument may be it will be sufficient if the purpose and intention of the testator can be clearly derived therefrom. They also contend that in the finding of the probate court "that said Moses K. Flory died intestate" the word "intestate" is evidently

a clerical mistake, and that "testate" was really intended.

That the probate court of Lane county had jurisdiction to, and did, probate the will more than two years before the commencement of this action must be conceded. There is nothing, however, in the proceedings of the court as presented to indicate clearly that the probate court undertook to determine, even if he had jurisdiction so to do, whether the will is a written will under the provisions of section 2 of the act relating to wills (Gen. Stat. 1901, § 7938), or a verbal will under the provisions of section 69 of that act (Gen. Stat. 1901, § 8007). Aside from the use of the word "intestate," the following excerpt from the record of the probate court seems to indicate that the court regarded it only as a verbal will:

"That said Moses K. Flory died intestate; that the personal property belonging to said estate is worth about $250; that said Mary A. Flory and B. M. Bovard are competent and willing to discharge the duties of administrators of said estate."

While the words "executor" and "administrator" are used somewhat interchangeably, yet the custom, in appointing the persons named in a written will to take charge of an estate, of designating such persons as "executors" is so nearly uniform and so generally known that the designation of the persons who were appointed in this case as "administrators" is at least some indication of the intention of the probate court to name them as caretakers only of the personal estate. Even when, for any reason, persons who are named in a will as executors thereof are not appointed to execute the trust, others appointed in their stead are usually designated as "administrators with the will annexed," and not simply as "administrators." It is not supposed, however, that any departure from the usual custom of designating such a trustee would in any way limit the powers conferred.

Whatever may have been the understanding or in-

tent of the probate court, the question was before the district court, and is now before this court, whether the writing in question constituted a will under section 2 of the wills act (Gen. Stat. 1901, § 7938) and devised the lands in question to Mary Ann Flory and Addie Bovard. We answer this question in the negative. The writing does not purport on its face to be the act of Moses K. Flory, but does purport to be a recital by B. M. Bovard and Elbert Fuller of oral statements made by Moses K. Flory as to his last wishes and reduced to writing and signed by Fuller and Bovard.

A will devising real estate has the effect of conveying the title to such real estate, upon the death of the devisor, to the devisee. And while it is desirable to give effect to the wills of deceased persons, regardless of formality and mistakes occurring through ignorance, where all the requirements of the statute have been complied with and the intent of the testator is clear, it would be extremely dangerous to hold an instrument of the character in question, lacking in the statutory requirements, to be such a will as conveys real estate. A written will must be the act of the testator, although another may pen the words or otherwise assist him in consummating the act. It must be "signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction." (Gen. Stat. 1901, § 7938.) It is a usual and proper precaution, if the testator is unable to sign his name, to have him at least make his mark and for some other person to write his name, although this probably is not absolutely necessary. Instead of writing the name of the testator it might, under some circumstances, be sufficient for the person called to his aid to sign his own name, but we do not so decide. It does not appear which one of the two persons who signed the instrument in question signed in lieu of the testator, if either so signed.

Section 7938 of the General Statutes of 1901 further requires that a written will "shall be attested and sub-

scribed in the presence of such party [the testator] by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same." This statute certainly contemplates at least three names to the certification of a will. Here there are but two, and whether these two, or either of them, signed the instrument in lieu of the testator or as witnesses does not appear.

From the character and purport of the instrument itself as well as from its certification the will fails to comply with the requirements of section 2 of the wills act. Whether it complies with section 69 of that act is not a question before us, but it seems to have been framed under the latter provision.

We understand the demurrer was sustained to the defenses of complete title and ownership alleged by Osborne and Whiting and does not affect the question of partition.

The order of the court sustaining the demurrer is affirmed and the case is remanded.