No. 37,836

JESSIE HUMPHREY, EARL H. MILLER, BESSIE MILLER, EFFIE DIEBALL, also known as Effie Duball, *Appellants*, v. BERENICE (Bernice) BOYD WALLACE and DOROTHY EMERY HILL, Executrices of the Last Will and Testament of Lillian M. Freeman, Deceased, and the Codicil Thereto; SCHOOL DISTRICT 21, Miami County; CYRIL KICE and ADA KICE; THE FIRST METHODIST CHURCH OF PAOLA; THE FIRST BAPTIST CHURCH OF PAOLA; THE FIRST PRESBYTERIAN CHURCH OF PAOLA; CITY OF PAOLA; A. A. BRYAN, Guardian *ad litem* for BRUCE LEE FREEMAN, BILLY KICE, and JANET SUE HUMPHREY; and Military Attorney for all the heirs at law of Decedent, and devisees and legatees under the Last Will and Testament of Lillian M. Freeman, Deceased, and the Codicil thereto, who are or may be in the military service of the United States, and the attorneys of record for said respective parties, *Appellees*.

(216 P. 2d 781)

filed April 8, 1950. Opinion

*J. Sidney Nye,* of Newton, argued the cause, and *Howard E. Payne* and *Herbert L. Lodge,* both of Olathe, and *Arnold C. Nye,* of Newton, were with him on the briefs for the appellants.

*Robert E. Coughlin,* of Paola, argued the cause, and *Edward H. Coughlin, Garrett Winkler, Robert I. Nicholson, Karl V. Shawver, Jr., Oliver D. Rinehart,*

*B. J. Carver, Robert H. Miller* and *A. A. Bryan,* all of Paola, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Wedell, J.: This is an appeal from an order admitting a will and codicil to probate.

The testatrix, Mrs. Lillian M. Freeman, was a widow seventy-three years of age with considerable business experience. She asked her banker and financial adviser of many years, C. N. Emery, chairman of the board of directors of the Miami County National Bank of Paola, to prepare her will. He declined to do so and advised her to consult an attorney. She gave Mr. Emery the necessary data to indicate the disposition she desired to make of her property. Mr. Emery delivered it to Coughlin & Coughlin, a law firm at Paola. That firm prepared the will and Mr. Emery gave it to the testatrix. On delivery she stated she would take the will home. She had some of her neighbors act as witnesses. Following its execution on June 17, 1947, the testatrix advised Mr. Emery she had the will executed and was placing it in her safety deposit box in the Emery bank. On January 2, 1948, testatrix came to the Emery home to have a codicil witnessed which she had prepared in her own handwriting. By its terms she bequeathed some articles of personal property, which apparently had sentimental value, to some of her immediate friends and to two or three of her distant relatives. Her closest relatives were cousins. Testatrix requested that Mr. and Mrs. Emery witness the codicil to her will. She stated she was going to the bank and would place the codicil with her will. After her death on September 12, 1948, the will and codicil were found in her safety deposit box where she previously had stated she would place them. The first instrument bore the following heading in large letters, "LAST WILL AND TESTAMENT OF LILLIAN M. FREEMAN," and on the bottom of the last page the following:

> "Lillie M. Freeman,
> "Lillian M. Freeman,
> "TESTATRIX

"The foregoing instrument was signed by the said testatrix, Lillian M. Freeman, as and for her last will and testament in our presence and we, at her request and in her sight and presence, and in the sight and presence of each other have hereunto subscribed our names as witnesses hereto at Paola, Kansas, this 17 day of June, 1947.

> "Clara D. Carpenter,
> "Witness
> "Elsie S. Schlesener,
> "Witness"

The codicil bore the following heading:

"CODICIL TO MY WILL
"Jan. 2, 1948
"Lillie M. Freeman"

Her signature appeared at the end of the codicil and under the words, "Witness to codicile" were the signatures of C. N. Emery and Maude B. Emery.

Appellants, four cousins of the testatrix, are opponents to the probate of the will. The sole ground of their complaint is the will and codicil were not executed and attested by the testatrix in accordance with the provisions of G. S. 1947 Supp. 59-606 and were, therefore, null and void. The probate court admitted the will and codicil. The contestants appealed to the district court. In the latter court it was stipulated the issue presented should be determined from the transcript of the pleadings and record made in the probate court. The district court found the will and codicil were each properly executed as such and that by the codicil testatrix republished, ratified, revived and confirmed her will except as modified by the terms of the codicil and that the two instruments contained the complete expression of the decedent's wishes with respect to disposition of her property.

The will and codicil combined, if valid, of course, constitute the complete will. For purposes of differentiation we shall, however, refer to the first instrument as the will unless otherwise indicated. We shall first consider appellants' contentions with respect to the will.

Appellants are the opponents of the will. They introduced no evidence at the probate hearing or in the district court. Did proponents' proof of the will satisfy the requirements of the law sufficiently to entitle it to probate? The pertinent portion of G. S. 1947 Supp. 59-606 reads:

"Every will . . . shall be in writing, and signed at the end thereof by the party making the same . . . and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same."

We are not concerned with whether proponents' proof supported the facts recited in the attestation clause. The test is whether the evidence satisfied the requirements of the statute.

Appellants say no witness saw the testatrix sign the will or codicil. This is true but the statute does not make that mandatory. (*In re Estate of Davis*, 168 Kan. 314, 320-321, 212 P. 2d 343, and cases therein cited.) The statute is framed in the alternative. It says,

". . . who saw the testator subscribe *or heard him acknowledge the same.*" (Our emphasis.) It is not imperative that we determine in the instant case whether the word "same" at the end of the statute relates to the word "will" or to the testator's signature insofar as an acknowledgment is concerned when the instrument presented to the witnesses for signature by the testator already bore the testator's signature and the testator acknowledged that such signed instrument constituted his will. (*In re Estate of Davis,* supra, p. 319.)

Appellants next argue there is no evidence the testatrix *told* any of the witnesses she had signed the will. This statement is also true. In that statement appellants, however, assume the testator may acknowledge his signature to a will only by means of a direct communication to that effect. The assumption is not sound. Our statute prescribes no particular words that must be employed to constitute an acknowledgment of a will or signature. The act of acknowledgment may be establisted by any words indicative of acknowledgment or by conscious acts or conduct of the testator from which an acknowledgment may be implied. (*In re Estate of Davis,* supra.)

Appellants argue there were no other facts or circumstances proving acknowledgment. We cannot agree. It is unnecessary to detail all the examined evidence of the witnesses to the will. Testimony of the first witness, Elsie Schlesener, a neighbor of the testatrix, in substance, discloses: Testatrix called her to come and witness the will; testatrix showed her the instrument, previously described, containing the signature of the testatrix; she recognized the signature of the testatrix; the testatrix said, "This is my will and I want you to be a witness"; testatrix further said she was "going to have Clara Carpenter for the other one."

Mrs. Carpenter testified, in substance: The testatrix called her by telephone to come to her home; she went and testatrix had the will on the dining-room table; testatrix handed her this subscribed instrument (the will) and asked her whether she would sign it; the name of the first witness was on it; testatrix told her she had Elsie (the first witness) sign it as she thought she should have a younger person as a witnes; she understood a will required two witnesses and she thought she was signing the will of the testatrix; the other witness was not there; testatrix did not say anything about having signed the will; she saw the signature of the testatrix and that of the first witness on it at the time she signed.

From the foregoing it is clear the witnesses knew the character

of the instrument they were signing (*In re Estate of Wittman*, 161 Kan. 398, 168 P. 2d 541) although that was not imperative so long as the instrument they signed as witnesses was acknowledged by the maker to be his instrument. (*In re Estate of Koellen*, 162 Kan. 395, 176 P. 2d 544.) The various statements of the testatrix and her conduct coupled with the obvious character of the instrument, signed by the testatrix, showed the testatrix acknowledged the instrument, including her signature thereon, as constituting her will. If the testatrix did not by her statements and conduct intend to acknowledge her signature there was nothing for these two neighbors to witness.

Our statute contains no requirement a testator must sign in the presence of the subscribing witnesses. (*In re Estate of Davis*, supra, p. 320.) It, of course, constitutes a far safer and a commendable practice to have the testator sign a will in the presence of the witnesses and to state to the witnesses that the instrument is his will. Here, however, we are asked to declare the will invalid in the face of an alternative statutory provision with which the testatrix complied.

Appellants cite decisions of this court pertaining to requirements for the proper execution and attestation of wills. (*Chaplin v. Chaplin*, 105 Kan. 481, 184 Pac. 984; *Hill v. Kennedy*, 134 Kan. 560, 7 P. 2d 88; *Imthurn v. Martin*, 150 Kan. 906, 96 P. 2d 860; *In re Estate of Charles*, 158 Kan. 221, 146 P. 2d 395; *In re Estate of Bond*, 159 Kan. 249, 153 P. 2d 912; *Lowry v. Lowry*, 160 Kan. 11, 159 P. 2d 411.) A comparison of the facts in these cases with those in the instant case clearly discloses the decisions do not compel judgment for appellants in this case.

The principles heretofore stated, of course, apply with equal force to the execution and attestation of codicils. The evidence touching proof of the proper execution and attestation of the codicil has been examined and found entirely sufficient. That the testatrix at the time the codicil was executed and attested again recognized her former will, with which she placed the codicil, cannot be doubted. In view of what has been said previously with respect to the sufficiency of the evidence to admit the will to probate we need not treat the second ground on which the trial court sustained the will, namely, that by the codicil testatrix republished, ratified, revived and confirmed her will, except as modified by the terms of the codicil.

The judgment of the trial court is affirmed.