No. 36,191

In the Matter of the Estate of H. G. Bond, Deceased (A. HARRY CRANE, Administrator of the Estate of H. G. Bond, Deceased, EDNA WASMUTH, and SUSIE BOND, *Appellants,* v. ROSA ELVA TRENT, *Appellee.*)

(153 P. 2d 912)

Opinion filed December 9, 1944.

*A. Harry Crane,* of Topeka, argued the cause, and *Ward D. Martin,* of Topeka, was on the briefs for the appellants.

*Randal C. Harvey,* of Topeka, argued the cause, and *George K. Melvin,* of Lawrence, and *Marlin S. Casey,* of Topeka, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is a petition to admit a will to probate. The probate court refused to admit it. On appeal the district court ordered it admitted. The opponents of the will have appealed.

Bond, the deceased, died on February 6, 1943. He left surviving him a daughter, Edna Wasmuth; a sister, Rosa Elva Trent; and Susie Bond, formerly his wife, who was divorced from him in 1928. The purported will was in the handwriting of the testator, as follows:

"Topeka Kansas
"December 12-1930
"I here by bequeath to my daughter Edna Johnston $1.00 to my sister Elva Trent the remainder that I may possess Elva Trent Executor with out Bond the will of H. G. Bond.

Murell Trent<br>Calvin Trent

This is not to be probated."

The statement "This is not to be probated" at the lower left-hand corner of the document is not in Bond's handwriting.

On July 6, 1943, an application for the appointment of an administrator was filed by Edna, his daughter. In that proceeding by way of answer and cross petition Rosa Elva Trent filed the above instrument, asked that it be found to be the will of Bond and the petition for appointment of an administrator be denied. After a hearing Edna's application was sustained, an administrator was appointed and the probate court found the purported will not properly executed and refused to admit it to probate. On October 28, 1943, Mrs. Trent appealed to the district court from the order appointing an administrator and refusing to admit the will to probate. The district court found the facts about as they have been detailed here and in addition made a finding as follows:

"VII. That during the month of December, 1930, but not on the exact date appearing thereon, H. G. Bond executed the instrument offered in evidence as 'Exhibit A' as his last will and testament, that he came to the home of Rosa Elva Trent and there in her presence and in the presence of George Trent, her husband, Doris Trent (now Doris Palmatier) her daughter, and Murrel Trent and Calvin Trent, her sons, exhibited 'Exhibit A' and announced that said

instrument was his will and that he desired the same to be witnessed by Murrel Trent and Calvin Trent; and that the names of Murrel Trent and Calvin Trent appearing on said instrument, were signed in ink by them in the presence of H. G. Bond and in the presence of each other. That afterwards, and at the request of H. G. Bond, Rosa Elva Trent wrote in ink, but not in the presence of the subscribing witnesses: 'This is not to be probated.' That the body of the instrument is in the handwriting of H. G. Bond and is written with a lead pencil; but was not written in the presence of either of the subscribing witnesses or other members of the Trent family."

There has been no question at any time but that Bond was of sound mind.

The trial court made a conclusion of law as follows:

"1. That the instrument dated December 12, 1930, identified as 'Exhibit A', is the valid last will and testament of H. G. Bond, deceased; that it complies with the provisions of Section 59-606 1941 Supplement to the General Statutes of Kansas, 1935, which requires that a will shall (1) be in writing, (2) that it shall be signed at the end thereof by the party making the same, and was so signed by H. G. Bond, deceased, when he wrote the last sentence thereof which reads: 'the will of H. G. Bond', and (3) was acknowledged by H. G. Bond in the presence of two competent witnesses who heard him acknowledge it as such."

The final judgment was that the order of the probate court appointing an administrator be set aside and the will admitted to probate.

Motion to set aside the above findings and conclusions because they were not supported by any credible evidence, also for a new trial, were filed by the administrator and Edna Wasmuth and Susie Bond. These motions were overruled. Hence this appeal.

The theory of the proponents of the will is that where the testator publishes a writing before witnesses as his will, prima facie the writing of his name anywhere on the document was intended as his signature. To this end the testimony of several witnesses was heard to the effect that deceased made statements at the time the witnesses signed the writing that he intended his name as it appears on the purported will to be his signature. This is the theory the trial court adopted, as shown by the quoted finding.

The appellants ask us in the first place to examine the testimony of the witnesses and reach a different conclusion than that reached by the trial court as to whether deceased announced this to be his will. We cannot do that on appeal. (See *First Nat'l Bank v. Cottingim,* 145 Kan. 330, 65 P. 2d 293, and many other authorities.)

There is a further question, however, in this case. The statute

providing for the execution of wills (G. S. 1943 Supp. 59-606) is as follows:

"Every will, except an oral will as provided in section 44 (59-608), shall be in writing, and signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction, and shall be attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same."

It will be noted the above statute requires that every will except an oral will, of which we shall speak presently, shall be in writing and signed at the end thereof by the party making it or by some other person for him in his presence. The oral will spoken of in that section is a provision for a nuncupative will, that is, a will that is an oral statement reduced to writing and subscribed by two disinterested witnesses within thirty days after the speaking of the testamentary words when the testator calls upon some person present at the time to bear witness that such is his will.

Nobody contends that this is such a will. It is nowhere contended that Kansas recognizes holograph or olographic wills. The fact is that aside from an oral will, as provided in G. S. 1943 Supp. 59-608 there is only one way to make a will in Kansas and that is by signing in the presence of two witnesses who saw the testator sign or heard him acknowledge it.

It will be noted, too, that this statute provides that the will shall be signed at the end.

Section 289 of 1 Page on Wills, Lifetime ed. contains an interesting statement on this provision. It is as follows:

"The English Wills Act of 1837, provided that the will must be signed 'at the foot or end thereof.' Legislation of this general type has been adopted in many states of the Union; Although frequently the American statutes use the word 'end' without the word 'foot.' In passing this statute, the legislature intended to do away with the necessity of inquiring into the actual intention of testator in writing his name in the body of the will, and to avoid inquiry as to whether the instrument in question is intended as a preliminary draft or as a final and complete instrument. Whether they also intended to require the signature to follow the dispositive provisions so closely that no chance for interpolating words would be given, is discussed elsewhere. If this was the paramount intent of the legislature, they used language which went far beyond the requirements of the situation. The intention of the testator, even when manifest on the face of the will, has become immaterial; and a will which is not signed at the end thereof is invalid." (p. 553.)

It will be seen that this statement shows the background for the passing of a statute such as ours requiring a signature at the end.

It will be seen that the words "H. G. Bond" that appear at the end of this will are not a part of any signature of this will. Rather they are a part of the will itself. Any other conclusion would render meaningless the words "The will of" which appear on the same line as "H. G. Bond." The provision in the statute that the will shall be signed at the end by the party making it means that there shall be a signature of the testator besides the writing that constitutes the will itself. The appearance of "H. G. Bond" where it is in this will has the same effect as though he had written "I, H. G. Bond hereby bequeath" at the beginning. The mere fact that his name appears as the last word in the will does not make the writing of his name there a signature.

There are authorities cited by the appellee holding that the name of the testator signed after the attestation clause constitutes an execution of the will. However, the case with which we are dealing here is where there is no signature at all, simply the name of the testator appearing in the will itself.

Admitting for the sake of argument that the testator intended the disposition to be made of his property which is provided in this instrument, we would still have the question that he did not proceed to do it in the proper way, that is, by signing his will at the end thereof. We prefer this strict construction of the statute to one which would tend to break down the formalities with which our legislature has seen fit to cloak the passing of property by devise.

While we have not heretofore passed on this precise question we considered analogous ones. *Osborne v. Atkinson*, 77 Kan. 435, 94 Pac. 796, is a case where the will was not signed by the deceased. The two witnesses contended that they had written the will for deceased and signed their name for him and that it was a valid will. In holding that it was not a valid will this court used the following language, which is persuasive on the question we have here:

"A will devising real estate has the effect of conveying the title to such real estate, upon the death of the devisor, to the devisee. And while it is desirable to give effect to the wills of deceased persons, regardless of formality and mistakes occurring through ignorance, where all the requirements of the statute have been complied with and the intent of the testator is clear, it would be extremely dangerous to hold an instrument of the character in question, lacking in the statutory requirements, to be such a will as conveys real estate. A written will must be the act of the testator, although another may pen the words or otherwise assist him in consummating the act. It must be 'signed at the end thereof by the party making the same, or by some other person in his presence and by his express direction.'" (p. 439.)

In *Clark v. Miller*, 65 Kan. 726, 68 Pac. 1071, one of the witnesses to the will in question was a devisee. We held that the will was not good as to this witness. We said:

"Section 2 of our act concerning wills (Gen. Stat. 1901, § 7938) provides that every last will and testament, except nuncupative ones, must be signed by the party making the same, or by some person in his presence and by his express direction, and be attested and subscribed to by two or more competent witnesses. It is as essential that the writing be subscribed by at least two competent witnesses as it is that it be signed by the testator, in order to be a valid will." (p. 727.)

*Hill v. Kennedy*, 134 Kan. 560, 7 P. 2d 88, is a case which deals in the main with the question of whether a will which it was claimed revoked an earlier will was duly executed. We held against revocation. A statement appearing in that opinion is of value here. We said:

"The witnessing of a will is just as essential as writing and signing at the end. It is a solemn ceremony, involving the assembling of qualified persons, who must perform prescribed acts under prescribed conditions, and the scrivener must tell what occurred and leave it to the court to draw the conclusion whether the will was witnessed." (p. 562.)

See, also, *Caeman v. Van Harke*, 33 Kan. 333.

We can best reach the correct conclusion in this case by a reexamination of the reasons for the provision that a will must be signed by the testator at the end. The object clearly was to change the rule followed in some jurisdictions, that the name of the testator written anywhere in the will in his own handwriting was a signature, provided he stated that he intended it so to be. It was the intention of our statute to provide that the name of the testator appearing anywhere in the body of the will itself was not to be regarded as a signature regardless of the declarations of the testator as was said in *Sears v. Sears*, 77 Ohio St. 104, 82 N. E. 1067, quoting from *Matter of Andrews*, 162 N. Y. 1:

" 'It is undoubtedly true that from time to time an honest attempt to execute a last will and testament is defeated by failure to observe some one or more of the statutory requirements. It is better this should happen under a proper construction of the statute, than that the individual case should be permitted to weaken those provisions calculated to protect testators generally from fraudulent alterations of their wills.' " (p. 125.)

The fact that the words "H. G. Bond" are the last words written in this purported will is of no significance. From the context it is clear that this name is part of the body of the will. In *Sears v. Sears*, supra, the court said:

"If a scrivener had prepared the will and had written her name where it appears in the attestation clause, her name there would have been merely *descriptio personae*; and when it is shown that the testatrix was her own scrivener, the natural presumption is that it was so intended; and even if the fact was that the testatrix wrote her name there, intending by that act to sign her will, still her signature would not be at the end of the will, and her intention could not have the effect of transposing it." (p. 127.)

This language was quoted with approval in *Churchill's Estate*, 260 Pa. 94, 103 Atl. 533. See, also, 1 Page on Wills, Lifetime ed. 553, also 28 R. C. L. 120.

Since it appears that his purported will was not signed at the end thereof, as required by the statute, the evidence offered by the proponents of the will as to the intention of the testator was to no avail. The will should not have been ordered admitted to probate.

The judgment of the trial court is reversed with directions to proceed in accordance with the views expressed in this opinion.

HARVEY, J., not sitting.